## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AMERICAN CIVIL LIBERTIES UNION**<br>915 15th Street, N.W., 7th Floor<br>Washington, DC 20005,<br><br>and<br><br>**WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS**<br>700 14th Street, N.W., Suite 400<br>Washington, DC 20005,<br><br>Plaintiffs,<br><br>v.<br><br>**DEPARTMENT OF JUSTICE**<br>950 Pennsylvania Avenue, N.W.<br>Washington DC 20530,<br><br>Defendant. | Civil Action No. |

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

(1)  This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552; and the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.   Plaintiffs seeks injunctive and declaratory relief to compel defendant Department of Justice to disclose requested records.

### Jurisdiction and Venue

(2)  This court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B).  This court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §§ 2201(a) & 2202.  Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

### The Parties

(3)  Plaintiff American Civil Liberties Union ("ACLU") is a nationwide, nonprofit, nonpartisan organization dedicated to protecting human rights and civil rights in the United

States.  It is the largest civil liberties organization in the country, with offices in 50 states and over 500,000 members. The ACLU is dedicated to holding the United States government accountable with respect to the rights of prisoners guaranteed by the U.S. Constitution and by universal human rights principles.  Although the ACLU has been involved in prison reform for more than half a century, in 1972 the organization consolidated its various prisoners' rights efforts around the United States into the National Prison Project ("NPP").  The NPP promotes a fair and effective criminal justice system in which incarceration is used only as a last resort, and its purpose is to prepare prisoners for release and a productive, law-abiding life at the earliest possible time.  Through litigation, advocacy, and public education, the NPP works to ensure that conditions of confinement are consistent with health, safety, and human dignity, and that prisoners retain all rights of free persons that are not inconsistent with incarceration.  The NPP's current docket includes class action civil rights suits on behalf of prisoners in thirteen states and the U.S. Virgin Islands.

(4) Plaintiff Washington Lawyers' Committee for Civil Rights and Urban Affairs is a civil rights litigation and advocacy nonprofit legal services provider.  The Committee pursues racial and economic justice cases that have an impact on persons living in the District of Columbia, Maryland, and Virginia. Among the program's priorities is addressing conditions of confinement for persons in prisons and jails.  Since the District of Columbia does not have its own prison system, persons convicted in the District of Columbia Superior Court and sentenced to a period of incarceration are confined in federal Bureau of Prisons facilities.  The Committee routinely brings litigation regarding federal Bureau of Prisons practices and advocates for District and others prisoners in federal custody.

(5)  Defendant Department of Justice ("DOJ") is a department of the Executive Branch of the United States Government.  The Federal Bureau of Prisons ("BOP") is a component of defendant DOJ.  Defendant DOJ is an "agency" within the meaning of 5 U.S.C. § 552(f).

## Background

(6)  According to documents previously released, the BOP identifies less than 3% of the people in its custody to require mental health care.  This percentage is in sharp contrast to the state prison systems, most of which have 20-30% of the population receiving mental health care. Moreover, approximately 20% of the people coming into BOP custody are flagged by a court or in their pre-sentencing reports as likely requiring mental health care.

(7)  Additionally, the few people who are identified by the BOP as requiring mental health care are approximately twice as likely as people not so identified to be housed in solitary confinement, despite the well-recognized risks that solitary confinement poses to people who are mentally ill.

(8)  Plaintiffs seek the documents discussed herein to assist in determining whether the extraordinarily low rate of mental illness identified by the BOP and the overrepresentation of the mentally ill in solitary confinement represents a violation of the constitutional and statutory rights of people with mental illness in BOP custody.

## Plaintiffs' FOIA Requests and Defendant's Lack of Response

(9)  By email to BOP dated December 17, 2019, Maria Morris (on behalf of plaintiff Washington Lawyers' Committee for Civil Rights and Urban Affairs) submitted a FOIA request to defendant.  Ms. Morris described the records requested as follows:

> 1.  All documents provided to the Office of the Inspector General in connection with its Review of the Federal Bureau of Prisons' Use of Restrictive Housing for Inmates with Mental Illness. To the extent data includes personally identifiable information, I ask that such information be redacted or removed, but that the

remaining data be provided. I also ask that, if this information exists in an electronic format, such as an excel spreadsheet, that it be produced in its electronic format.

2.  All plans of the Federal Bureau of Prisons to address the recommendations made by the Office of the Inspector General in its Review of the Federal Bureau of Prisons' Use of Restrictive Housing for Inmates with Mental Illness.

3.  All assessments of the implementation or efficacy of any plans of the Federal Bureau of Prisons to address the recommendations made by the Office of the Inspector General in its Review of the Federal Bureau of Prisons' Use of Restrictive Housing for Inmates with Mental Illness.

4.  A listing from the Bureau's Electronic Medical Record System and Psychology Data System (BEMR-PDS), as of the end of FY 2019 (or other identified date in 2019 or 2020), of the Mental Health Care Levels of all persons in the custody of the Federal Bureau of Prisons who have diagnosed mental health disorders, together with the diagnoses, the date(s) of diagnosis, the status of each diagnosis (current, remission, or resolved), and the date the status was documented in BEMR-PDS. This is the same type of data that was provided to the Office of the Inspector General in connection with its Review of the Federal Bureau of Prisons' Use of Restrictive Housing for Inmates with Mental Illness I ask that, if this information exists in an electronic format, such as an excel spreadsheet, that it be produced in its electronic format with any personally identifying information redacted or deleted. Please see the OIG Review attached, page 67, Table 7 as an example and descriptor of the data requested. We are seeking the same data fields that were provided to the Office of the Inspector General, except for fields with personally identifying information.

5.  Any performance audits of mental health services, or any aspect of mental health services, at any Federal Bureau of Prisons facility since January 1, 2017, regardless of what entity conducted such audits.

6.  Any plans to address issues or challenges identified in any performance audits of mental health services, or any aspect of mental health services, at any Federal Bureau of Prisons facility since January 1, 2017.

7.  Calendars for all mental health groups at each facility of the Federal Bureau of Prisons for the months of September, October and November 2019.

8.  The number and types of inmate interactions with Psychology Services personnel, broken down by facility, for Fiscal Years 2017, 2018, and 2019.

9.  Any reports on the numbers, frequency or duration of suicide watch placements during fiscal years 2017, 2018 and 2019.

10.  Total amount spent on psychiatric medications during fiscal years 2017, 2018 and 2019.

11.  Number of people on psychiatric medications as of September 30, 2019.

12.  Total number of prescriptions for psychiatric medications as of September 30, 2019.

13.  Spending during Fiscal Year 2019 on each of the twenty most prescribed psychiatric medications.

14.  Monthly per patient cost during Fiscal Year 2019 for each of the twenty most prescribed psychiatric medications.

15.  For the Challenge Program, Mental Health Step Down Units, the Transitional Care Unit, the STAGES Program, the FIT Program, and Resolve Program, please provide the following information, broken down by program and facility:

    a.  The number of people participating in each programs as of September 30, 2017, 2018, and 2019; and

    b.  The number of people successfully completing each program in Fiscal Years 2017, 2018, and 2019; and

    c.  Documentation describing the criteria, duration, capacity, program, treatment interventions and staffing of each program.

(10)  By letter to Ms. Morris dated December 19, 2019, BOP acknowledged receipt of plaintiff's FOIA request and assigned it "FOIA/PA Request Number: 2020-01450."

(11)  By letter to BOP dated March 2, 2020, Ms. Morris (on behalf of plaintiff ACLU) submitted a FOIA request to defendant.  Ms. Morris described the records requested as follows:

1.  DOCUMENTS identifying the number of persons at each MENTAL HEALTH CARE LEVEL, at each INITIAL MENTAL HEALTH CARE LEVEL, and classified as STDY3-MH and STDY4-MH at each FACILITY, disaggregated by FACILITY, as of September 30, 2016, 2017, 2018, and 2019, and as of the end of the month immediately preceding production of responsive records.

2.  DOCUMENTS identifying the number of persons at each MENTAL HEALTH CARE LEVEL, at each INITIAL MENTAL HEALTH CARE LEVEL, and classified as STDY3-MH and STDY4-MH in RESTRICTIVE HOUSING UNITS at each FACILITY, disaggregated by FACILITY, as of September 30, 2016,

2017, 2018, and 2019, and as of the end of the month immediately preceding production of responsive records.

3. BOP's Mental Health Care Level Training Guide, referenced on page 9 of BOP Program Statement 5310.16, Treatment and Care of Inmates with Mental Illness, and any updates or revisions thereto.

4. Any and all DOCUMENTS identifying, by occupational series, the number of authorized, filled, and vacant mental health staff positions at each FACILITY, disaggregated by FACILITY, as of September 30, 2016, 2017, 2018, and 2019, and as of the end of the month immediately preceding production of responsive records.

5. Any and all DOCUMENTS provided by BOP to the Office of the Inspector General ("OIG") in connection with the OIG's examination of the BOP's use of RHUs for inmates with mental illness, the results of which OIG published in June 2017 in a document entitled "Review of the Federal Bureau of Prisons' Use of Restrictive Housing for Inmates with Mental Illness."

6. Any and all COMMUNICATIONS between the BOP and the OIG regarding plans to address the recommendations made by the OIG in its "Review of the Federal Bureau of Prisons' Use of Restrictive Housing for Inmates with Mental Illness."

7. Any and all DOCUMENTS reflecting the implementation and assessment of any plans to address the recommendations made by the OIG in its "Review of the Federal Bureau of Prisons' Use of Restrictive Housing for Inmates with Mental Illness."

8. Any and all DOCUMENTS reflecting the current MENTAL HEALTH CARE LEVEL, mental health diagnoses, and status of mental health diagnoses of persons in the custody of BOP. This request seeks the type of DOCUMENT excerpted and described at page 67, Table 7, of the OIG's "Review of the Federal Bureau of Prisons' Use of Restrictive Housing for Inmates with Mental Illness."

9. Any and all DOCUMENTS reflecting the costs associated with mental health care services system-wide and by facility for fiscal years 2016, 2017, 2018, and 2019, and as of the end of the month immediately preceding production of responsive records. This request seeks the tracking information referenced by the United States Government Accountability Office ("GAO") in its study entitled "Federal Prisons: Information on Inmates with Serious Mental Illness and Strategies to Reduce Recidivism," published in February 2018.

10. Any and all DOCUMENTS provided by BOP to the GAO in connection with the GAO's study entitled "Federal Prisons: Information on Inmates with Serious Mental Illness and Strategies to Reduce Recidivism," published in February 2018.

11.  Any and all COMMUNICATIONS regarding the criteria to identify persons in BOP custody with serious mental illness.

12.  Any and all DOCUMENTS reflecting the number and types of interactions with Psychology Services personnel system-wide and by facility for fiscal years 2016, 2017, 2018, and 2019, and as of the end of the month immediately preceding production of responsive records. This request seeks the tracking information referenced by the GAO in Appendix IV to its study entitled "Federal Prisons: Information on Inmates with Serious Mental Illness and Strategies to Reduce Recidivism," published in February 2018.

13.  BOP's annual list of top 50 medication expenditures for fiscal years 2016, 2017, 2018, and 2019.

14.  Calendars for all mental health groups at each FACILITY for the months of September, October, November, and December 2019.

15.  Any and all DOCUMENTS describing the locations of, capacity of, completion rate and numbers of, criteria for placement in, treatment provided in, and staffing of each of the following mental health programs:

- The Challenge Program;
- Mental Health Step Down Units;
- The Transitional Care Unit;
- The STAGES Program;
- The FIT Program; and
- The Resolve Program.

16.  Any and all DOCUMENTS reflecting performance audits conducted since January 1, 2017 at any FACILITY of mental health services or of any aspect of mental health services, and any plans to address problems, issues or challenges identified in such performance audits.

(12)  In the letter to defendant dated March 2, 2020, Ms. Morris requested a waiver of any search, review, or duplication fees associated with its FOIA request pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) and 28 C.F.R. § 16.10(k).  The letter further noted that the ACLU qualifies as a "representative of the news media" and that the records were not being sought for commercial use.  Accordingly, Ms. Morris stated that any fees assessed for the processing of its requests

should be "limited to reasonable standard charges for document duplication" pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) and 28 C.F.R. § 16.10(d).

(13)  By email dated March 4, 2020, defendant informed Ms. Morris that its FOIA request dated March 2, 2020, had "been combined together" with the request plaintiff Washington Lawyers' Committee for Civil Rights and Urban Affairs had submitted on December 17, 2019, which had been designated as FOIA/PA Request Number 2020-01450.

(14)  Since March 2020, plaintiffs have made multiple inquiries to defendant concerning the status of the combined FOIA requests.  Despite those inquiries, to date defendant has not issued a determination nor released any requested records.  Nor has defendant issued a determination on plaintiffs' request for a waiver of all applicable processing fees.

## CAUSES OF ACTION

### Violation of the Freedom of Information Act for Wrongful Withholding of Agency Records

(15)  Plaintiffs have exhausted the applicable and available administrative remedies with respect to defendant's processing of plaintiffs' FOIA requests.

(16)  Defendant has wrongfully withheld the requested records from plaintiffs.

(17)  Plaintiffs are entitled to injunctive and declaratory relief with respect to the release and disclosure of the requested documents.

### Violation of the Freedom of Information Act for Failure to Issue a Fee Waiver Determination

(18)  Plaintiffs have exhausted the applicable and available administrative remedies with respect to the request for a waiver of all applicable processing fees associated with the requested records.

(19)  Defendant has wrongfully denied the request for a waiver of processing fees.

(20)  Plaintiffs are entitled to injunctive and declaratory relief with respect to the request for a waiver of all processing fees.

### Requested Relief

WHEREFORE, plaintiffs pray that this Court:

A.  Order defendant Department of Justice to disclose all non-exempt records responsive to plaintiffs' FOIA requests immediately, with all processing fees waived;

B.  Issue a declaration that plaintiffs are entitled to disclosure of the requested records;

C.  Award plaintiffs their costs and reasonable attorneys' fees incurred in this action; and

D.  Grant such other relief as the Court may deem just and proper.

Respectfully submitted,

*/s/ David L. Sobel*
DAVID L. SOBEL, D.C. Bar No. 360418
5335 Wisconsin Avenue, N.W., Suite 640
Washington, DC 20015
(202) 246-6180

MARIA V. MORRIS, D.C. Bar No. 1697904
ACLU National Prison Project
915 15th Street, N.W., 7th Floor
Washington, D.C. 20005-2302
(202) 548-6618

ARTHUR B. SPITZER, D.C. Bar No. 235960
American Civil Liberties Union Foundation
  of the District of Columbia
915 15th Street, N.W., 2nd floor
Washington, DC 20005
(202) 601-4266

JONATHAN M. SMITH, D.C. Bar No. 396578
Washington Lawyers' Committee for Civil Rights
  and Urban Affairs
700 14th Street, N.W., Suite 400
Washington, D.C. 20005
(202) 319-1053

*Counsel for Plaintiffs*